**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSE**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* [SEALED],<br>Plaintiff,<br>v.<br>[SEALED],<br>Defendant. | NO.<br>COMPLAINT AND JURY DEMAND<br>**Filed Under Seal**<br>pursuant to<br>31 U.S.C. §3730(b)(2) |

**FILED UNDER SEAL**
**31 U.S.C. §3730(b)(2)**
**DO NOT POST ON ECF**
**DO NOT PUT IN PRESS BOX**

Stephen A. Teller, WSBA #23372
Teller Law
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969

*Counsel for Plaintiff Relator*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DANIEL FOSTER,<br>Plaintiff,<br>v.<br>FEDEX DATAWORKS, a Delaware corporation, SHOPRUNNER, INC. a Pennsylvania corporation, and affiliated and associated Companies,<br>Defendant. | NO. 2:25-cv-2693<br>COMPLAINT AND JURY DEMAND<br>**Filed Under Seal** pursuant to 31 U.S.C. §3730(b)(2) |

Daniel Foster ("Relator") brings this action as a *qui tam* relator on behalf of the United States against Defendant, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §3729-33, to recover damages, penalties, attorney fees and costs, and other relief.

## NATURE OF THE ALLEGATIONS

1. On April 27, 2020, Defendant ShopRunner received approval for a first-draw Paycheck Protection Program ("PPP") loan in the amount of $3,864,202.00. At the time of the application, ShopRunner, under the management and majority ownership of Kynetic, a private equity firm, misrepresented its eligibility by failing to account for the employee count and revenue of its affiliates, which collectively exceeded the Small Business Administration's ("SBA") eligibility thresholds for its industry and the alternative size standard.



**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

2. ShopRunner falsely claimed 185 employees and classified itself under NAICS code 541519 (Other Computer Related Services), which has a $30 million revenue size standard. However, ShopRunner and its affiliates, including Rue Gilt (700 employees) and Fanatics (over 5,000 employees), collectively employed nearly 6,000 workers. ShopRunner's estimated revenue of at least $110 million in 2020, not including its affiliates, far exceeded the SBA's size standard, rendering it ineligible for the PPP loan.

3. Defendant FedEx Dataworks and its parent FedEx Corporation acquired Defendant ShopRunner in December 2020. In June 2020, ShopRunner sought loan forgiveness under the ownership and management of FedEx. The post-acquisition ShopRunner and its direct successor, FedEx Dataworks, are responsible for the actions of Defendant ShopRunner described herein.

4. Relator is an original source of the complaint allegations. Prior to the filing of this Complaint, Relator voluntarily made substantive disclosures to the government of facts and evidence underlying the allegations in this Complaint.

5. This action is filed and under seal pursuant to the requirements of the False Claims Act, 31 U.S.C. §3730(b)(2).

## Jurisdiction and Venue

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1345 and 31 U.S.C. §3732, which confers jurisdiction over actions brought pursuant to 31 U.S.C. §§3729 and 3730.

7. This Court may exercise personal jurisdiction over Defendants, and venue is appropriate in this Court, under 31 U.S.C. §3732(a) and 28 U.S.C. §1391(b)(2), because Defendant FedEx Dataworks resides in this District and transacts business in this District.



**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

**The Parties**

8. Relator is a dual citizen of the United States and Germany. He currently has a primary residence in Berlin, Germany. Relator first became aware of the issue of PPP fraud when he discovered that an organization with which he was affiliated had obtained PPP funds improperly. Sensing a larger problem, Relator began to use his digital investigative skills to identify other instances of apparent PPP fraud, including FedEx Dataworks's fraud.

9. Defendant FedEx Dataworks is an e-commerce and logistics platform organized under the laws of Delaware, with its principal place of business at 942 South Shady Grove Road, Memphis, TN 38120, in this district.

10. Defendant ShopRunner, and its successor Defendant FedEx Dataworks, is a specialty online retailer with headquarters in Chicago, Illinois which took out the PPP loan referenced herein. It was acquired by Defendant FedEx Dataworks and therefore now transacts business in this district. In 2023, ShopRunner was merged into FedEx DataWorks.

**Background On FedEx Dataworks And Its Affiliates**

11. Founded in 2010 as ShopRunner, Defendants operated originally as a subscription-based e-commerce and logistics platform offering free two-day shipping to members. It had offices in Chicago, Illinois; San Mateo, California; and Philadelphia, Pennsylvania. By 2020, ShopRunner reported approximately 5.5 million members and generated estimated revenue in the range of $110 million.

12. ShopRunner claimed NAICS code 541519 (Other Computer Related Services) on its PPP loan application.

13. ShopRunner was acquired by FedEx in December 2020 for $225 million and subsequently integrated into FedEx Dataworks, which continues to operate the ShopRunner



**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

service under the brand "ShopRunner by FedEx." Defendants continue to use the same business model.

14. Defendants also maintained the same key corporate officers before and after the transition, including Sriram Krishnasamy, who served as a director of ShopRunner during its 2021 loan forgiveness application and now leads FedEx Dataworks.

15. During the relevant period of April 2020, ShopRunner was majority-owned and controlled by Kynetic, a private equity firm based at 225 Washington Street, Conshohocken, Pennsylvania 19428, and led by Michael G. Rubin. Kynetic held a 70% stake in ShopRunner starting in 2011, with additional minority investments from Alibaba Group, American Express, and UPS. Kynetic's management control is evidenced by overlapping leadership, including Michael G. Rubin as ShopRunner's Chairman, Michael Conn as a director, and Sam Yagan as ShopRunner's CEO and a Kynetic team member.

16. Kynetic also held majority stakes in and managed two other e-commerce companies during the relevant period: Rue Gilt, with 700 employees, and Fanatics, with over 5,000 employees worldwide and a valuation exceeding $5 billion by 2022.

17. Under SBA affiliation rules (13 C.F.R. §121.301(f)), ShopRunner's employee count, combined with Rue Gilt and Fanatics, totaled nearly 6,000 workers in 2020, far surpassing the SBA's employee thresholds for PPP eligibility.

18. ShopRunner's financial scale further disqualified it from PPP eligibility. With estimated 2020 revenue of at least $110 million from its 5.5 million members (assuming a conservative $20 per member annual fee), ShopRunner exceeded the SBA's $30 million revenue size standard for NAICS code 541519. Additionally, its $225 million acquisition value in 2020



**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

and Kynetic's affiliated assets indicate a tangible net worth well above the SBA's alternative size standard of $15 million, with net income exceeding $5 million.

19. ShopRunner knowingly misrepresented its size and eligibility on its April 2020 PPP loan application by claiming only 185 employees.

20. In June 2020, after the acquisition and under the management of FedEx-appointed management, ShopRunner fraudulently sought forgiveness of its loan. After ShopRunner was merged into FedEx DataWorks in 2023, its leadership team continued on to lead the new organization. FedEx DataWorks still operates ShopRunner under the same brand name as a standalone service.

21. Here, FedEx Dataworks is a mere continuation and de facto merger of Shoprunner.The continuity of leadership, including Sriram Krishnasamy's role in both entities, and the ongoing use of the ShopRunner brand establish FedEx Dataworks as the corporate successor liable for ShopRunner's fraudulent PPP loan and forgiveness claims.

## Legal Background

### A. The False Claims Act

22. The False Claims Act provides, in pertinent part, that any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. §3729(a)(1).



**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

23. For purposes of the False Claims Act, "the terms 'knowing' and 'knowingly' mean that a person, with respect to information[,] (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. §3729(b)(1)(A). No proof of specific intent to defraud is required. 31 U.S.C. §3729(b)(1)(B).

**B. The Paycheck Protection Program**

24. In March 2020, through the CARES Act, Pub. Law 116–136, Congress established the PPP to provide economic relief for small businesses during the coronavirus pandemic.

25. Under the first round of the PPP, an eligible business could apply for a loan of up to 2.5 times its average monthly payroll during 2019, subject to a maximum amount of $10 million. *See* 15 U.S.C. §636(a)(36)(E); *see also* Small Business Administration ("SBA") Form 2483, Instructions.

26. An applicant for a first draw PPP loan could qualify as an eligible business under any of three standards:

> (1) having an average of no more than 500 employees during 2019 or during the 12 months prior to applying for a first draw PPP loan, *see* 15 U.S.C. §636(a)(36)(D)(i)(I) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 14 (April 6, 2020);
>
> (2) the SBA employee-based or revenue-based size standard corresponding to the business's primary industry, *see* 15 U.S.C. §636(a)(36)(D)(i)(II) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2; or
>
> (3) the SBA's alternative size standard, which provided that the business must have (a) a maximum tangible net worth of not more than $15 million, *and* (b) average net income after tax of not more than $5 million for the business's two full preceding fiscal years as of March 27, 2020, *see* 86 Fed. Reg. 15083, 15085 n.5 (Mar. 22, 2021) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2.



**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

27. Under each of these eligibility standards, the law required the business to include its affiliates in assessing whether the business met the standard. *See* 15 U.S.C. §636(a)(36)(D)(iv). The affiliation rule in effect at the time, 13 C.F.R. §121.301(f) (2019) (*available at* 81 Fed. Reg. 41423, 41429 (June 27, 2016)), provided that affiliation could arise under various circumstances, including:

> <u>Affiliation based on ownership.</u> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.
>
> <u>Affiliation based on management.</u> Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

*Id.*; *see also* SBA, *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* (April 3, 2020).

28. Under longstanding SBA program rules, all employees of the firm and affiliates are counted. 13 C.F.R. 121.106 (a) sets out how the SBA calculates the number of employees, in pertinent part, as follows:

> (a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis. This includes employees obtained from a temporary employee agency, professional employer organization or leasing concern.



**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

29. SBA regulations make clear that it is the average number of employees of the concern that is used (including both domestic and any foreign affiliates). 13 C.F.R. 121.106(b)(1). The CFR states that the average should be based on the preceding 24 calendar months, although other SBA guidance indicates a 12-month period may be used for PPP loans. Here, part-time and temporary workers are included. To the extent they perform work for a company and receive compensation, owners, officers, and directors also fall within this definition.

30. That section continues, making clear under 13 C.F.R. 121.106 (b)(4) that not only are the business's employees counted, but so are employees of any closely affiliated businesses. That is, the affiliation rules are redundant throughout the regulatory scheme. There is no way a business can review the rules without seeing that it must count affiliated businesses, and the original application and forgiveness forms both reference the regulations and laws as part of the certifications made to the bank and therefore to the government.

31. The statutes creating the PPP program provided that SBA would reimburse PPP lenders for processing at specified rates. The rate for first draw loans of $2,000,000 or more was 1 percent, see 15 U.S.C. §636(a)(36)(P)(i)(I)(cc). Here, the SBA paid Defendant's lender $68,031.87 in fees because of Defendant's fraudulent misrepresentations.

32. The PPP also provided for full forgiveness of a loan so long as the borrower used the loan proceeds in accordance with the PPP rules and did not reduce the number of its employees. *See* 15 U.S.C. §636m; SBA, *Frequently Asked Questions (FAQs) on PPP Loan Forgiveness* (Oct. 13, 2020). To the extent a borrower reduced the average number of its employees in the months after receiving the loan, the PPP created a formula for reducing the loan forgiveness amount accordingly. *See* 15 U.S.C. §636m(d)(2).



**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

33. Defendant claimed the full amount of the loan plus interest when applying for forgiveness.

**The First Draw PPP Loan**

34. On April 27, 2020, the Small Business Administration ("SBA") approved a first-draw Paycheck Protection Program ("PPP") loan to ShopRunner, Inc., as predecessor to Defendant FedEx Dataworks, in the amount of $3,864,202.00 through Pacific Western Bank (loan number 5489577205). On the application form for this loan, ShopRunner represented that it had 185 employees, despite employing, together with its affiliates, nearly 6,000 workers, exceeding the SBA's 500-employee threshold for PPP eligibility under NAICS code 541519.

35. On June 11, 2021, under the ownership and management of Fedex, Shoprunner sought forgiveness of its loan. The SBA granted forgiveness of $3,907,078.00 on or around July 8, 2021.

**Fraud Allegations**

36. Defendants fraudulently obtained a $3,864,202.00 first-draw Paycheck Protection Program ("PPP") loan by knowingly misrepresenting ShopRunner's size and eligibility on its April 27, 2020, application. ShopRunner and its affiliates, including Rue Gilt and Fanatics, collectively employed nearly 6,000 workers in 2020, exceeding the Small Business Administration's ("SBA") 500-employee threshold for NAICS code 541519 (Other Computer Related Services).

37. On its PPP loan application, ShopRunner falsely claimed 185 employees, failing to disclose the combined workforce of its affiliates under SBA affiliation rules (13 C.F.R. §121.301(f)). Corporate records, including 2019 and 2020 Florida filings and Kynetic's August 2020 profiles, confirm that ShopRunner was majority-owned and controlled by Kynetic, which also managed Rue Gilt (700 employees) and Fanatics (over 5,000 employees).



Teller Law
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

38. ShopRunner's ineligibility is further evidenced by its financial scale. With estimated 2020 revenue of at least $110 million from 5.5 million members, ShopRunner far exceeded the SBA's $30 million revenue size standard for NAICS code 541519. This figure does not include the revenue of its affiliates. Additionally, its $225 million acquisition value by FedEx in 2020 and Kynetic's affiliated assets indicate a tangible net worth and net income exceeding the SBA's alternative size standard of $15 million and $5 million, respectively.

39. Kynetic's management control over ShopRunner is corroborated by overlapping leadership, including Michael G. Rubin as Chairman, Michael Conn as a director, and Sam Yagan as CEO and Kynetic team member, as documented in 2019 and 2020 Florida corporate filings and Kynetic's website. These records demonstrate that ShopRunner knowingly or recklessly misrepresented its employee count and financial status to secure the PPP loan.

40. Despite its ineligibility, ShopRunner applied for and received forgiveness of $3,907,078.00 in the summer of 2021, under FedEx's ownership and management. FedEx Dataworks, as the corporate successor to ShopRunner, is liable for these fraudulent claims.

41. Relator alleges that ShopRunner, the predecessor to FedEx Dataworks, deliberately misrepresented its employee count, revenue, and eligibility to secure and retain PPP funds it was not entitled to receive, in violation of the False Claims Act.

## COUNT I
## False Claims Act, 31 U.S.C. §3729(a)(1)(A)

42. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

43. Through the acts set forth above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment to SBA for its first draw PPP loan and loan forgiveness to which it was not entitled.



Teller Law
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

44. By virtue of the false or fraudulent claims that Defendants knowingly made or presented, or caused to be made or presented, Defendants violated the False Claims Act, 31 U.S.C. §3729(a)(1)(A), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT II
## False Claims Act, 31 U.S.C. §3729(a)(1)(B)

45. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

46. Through the acts set forth above, Defendants knowingly made, used, or caused to be made and used, false records and statements material to the payment of false or fraudulent claims by SBA for a first draw PPP loan and loan forgiveness to which it was not entitled.

47. By virtue of the false records and statements Defendants made, used, or caused to be made or used, Defendants violated the False Claims Act, 31 U.S.C. §3729(a)(1)(B), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendants:

On behalf of the United States:

a) awarding the United States treble damages sustained by it for each of the false claims or improperly retained payments;

b) awarding the United States a maximum civil penalty for each of the false claims, records, or statements;

c) awarding Relator the maximum share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

d) awarding Relator litigation costs, expenses, and reasonable attorneys' fees; and



**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com

e) granting such other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

DATED this 26th day of June, 2025.

Stephen A. Teller, WSBA #23372
Attorney for Relator Daniel Foster



**Teller Law**
300 Lenora Street, #1471
Seattle, WA 98121
(206) 324-8969 steve@stellerlaw.com